IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STACY M. MORRIS,

   Plaintiff,

vs.            Civil Action 2:10-CV-902
               Judge Frost
               Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

   Defendant.

## REPORT AND RECOMMENDATION

### I.
### Introduction and Background

  This is an action instituted under the provisions of 42 U.S.C. §§405(g), 1383 for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors,* Doc. No. 10, and the Commissioner's *Memorandum in Opposition*, Doc. No. 15.

  Plaintiff Stacy M. Morris filed her applications for benefits on May 16, 2007, alleging that she has been disabled since September 8, 2006, as a result of arthritis of both knees and a back injury. *Page ID#* 134-43, 144-46; 194. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

  A video hearing was held on June 2, 2009, at which plaintiff, represented by counsel, appeared and testified. *Page ID#* 52-62.[1] In a decision dated July 28, 2009, the administrative law judge, applying the Medical-Vocational Guidelines, concluded that plaintiff is not disabled

---

[1] William L. Tanzey appeared as a vocational expert, but did not testify.

within the meaning of the Social Security Act. *Page ID#* 38-47. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 7, 2010. *Page ID#* 25-27.

Plaintiff was 39 years of age at the time the administrative law judge issued her decision. *Page ID#* 46, 189. She has a high school education and prior relevant work experience.

Plaintiff testified at the administrative hearing that she is 5'4" and weighed at the time 335 pounds, although her normal weight was 260 pounds. *Page ID#* 54, 59. She has tried to lose weight, but has difficulty exercising because of her back and knee pain. *Page ID#* 59. Plaintiff stopped working because of back pain. *Page ID#* 55. She also has high blood pressure, high cholesterol, irregular menstrual cycles, dizziness and migraine headaches, which last for two to three hours, two to three times per month. *Page ID#* 56. Her medications, *i.e.,* morphine and Xanax, cause dizziness and sleepiness. *Id.* Her migraine headaches cause forgetfulness and interfere with her ability to concentrate. *Page ID#* 58. Plaintiff also testified to depression and anger relating to her disability. *Id.*

Plaintiff estimated that she can sit for about 20 minutes at a time, stand for 5 minutes, and walk less than 2 minutes because of her knee, back and hip pain. *Page ID#* 61. Sometimes, her pain is so severe that she fears that she will fall down, although she has never done so. *Id.*

On a typical day, plaintiff spends most of the day sitting in a chair with her legs elevated. *Page ID#* 60. She watches TV or reads and

then naps for two to three hours. *Id.; Page ID#* 62. Plaintiff's husband does all of the housework and most of the shopping. *Page ID#* 61. If she accompanies him to a store, she must use a scooter or a wheelchair. *Id.* She does not drive. *Id.*

**II.**

**The Medical Evidence of Record.**

Plaintiff presented to the emergency room at Coshocton County Memorial Hospital on June 26, 2006, with complaints of right knee pain. *Page ID#* 282-83. She had undergone arthroscopic surgery of the right knee in 2000. *Id.* X-rays of plaintiff's right knee showed normal bone and joint outlines and minor degenerative changes of the medial joint compartment and the patellar articular surface. *Page ID#* 281. Plaintiff was advised to apply ice and take Naproxen. *Page ID#* 283.

On October 18, 2006, plaintiff sought emergency room treatment for left knee pain which had begun the day before. She was diagnosed with a popliteal cyst of the knee; she was advised to use aspirin to help thin her blood and to continue using ibuprofen. *Page ID#* 306-07.

Sivaram Kollengode, M.D., a family practitioner, has treated plaintiff for lower back pain, hypertension, colds, migraines and abnormal menstrual cycles. *Page ID#* 317-346, 377-97, 410-22. Dr. Kollengode has reported essentially normal muscular and neurological findings, with only mild hip tenderness and sometimes mild tenderness in the biceps. *Id.* Dr. Kollengode's diagnoses include unspecified myalgias, hypertension, insomnia and lower leg joint pain. *Id.*

Initially, plaintiff complained to Dr. Kollengode of pain behind the left knee, swelling of the left knee and left lower leg, and sharp pain with weight bearing. *Page ID#* 346. Examination revealed left knee tenderness, positive McMurray's and fullness of the knee. Dr. Kollengode diagnosed left knee arthralgia and a Baker's cyst. He recommended that plaintiff consult an orthopedist. *Id.*[2] On November 27, 2006, plaintiff complained of headaches three times per day and continued left knee pain. *Page ID#* 345. Dr. Kollengode diagnosed obesity (her height was recorded at 64 inches and weight at 293 pounds), hypertension and headaches. *Id.*

During a January 30, 2007 visit to an emergency room, plaintiff was diagnosed with sciatica and obesity. *Page ID#* 302-03.

On February 10, 2007, plaintiff reported to Dr. Kollengode that Vicodin did not help her pain and made her sleepy. Dr. Kollengode noted bilateral gluteal tenderness. He diagnosed low back/gluteal pain. *Page ID#* 342. In June 2007, plaintiff reported sharp back pain and again complained that pain medication was not helping. *Page ID#* 336. In July 2007, plaintiff reported that her back pain was better with a back brace; she was "up walking a long time." *Page ID#* 335.

Plaintiff presented to the emergency room on April 20, 2007, with complaints of back pain. Plaintiff was able to sit and walk, and had good pulses, sensation, motor tone and development in her legs. Deep tendon reflexes in her legs were diminished. She was diagnosed with a probable lower back herniation and was given a painkiller and a muscle relaxant. *Page ID#* 294-96.

---

[2]Plaintiff explained that she did not consult an orthopedist because of financial concerns. *Page ID#* 345.

4

In July 2007, a state agency reviewing physician opined that plaintiff could lift and /or carry and push and/or pull up to 50 pounds occasionally and 25 pounds frequently; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; and could occasionally kneel, crouch, stoop, and crawl. *Page ID#* 284-91. In December 2007, another state agency reviewing physician affirmed that assessment. *Page ID#* 308.

On November 5, 2007, plaintiff was evaluated by pain specialist Michael Sayegh, M.D. Plaintiff complained of pain in the back, hips and knees on both sides and headaches. Examination revealed lower back tenderness, a "mildly positive" right leg raising test, tenderness in the knee joint bilaterally, limping while walking and neurologically intact lower extremities. Dr. Sayegh diagnosed lumbago, strain/sprain, fibromyalgia, bilateral knee pain, osteoarthritis, anxiety and sleep disturbance. He prescribed medication. *Page ID#* 357-58.

An MRI of plaintiff's lower extremities, taken on November 9, 2007, showed a possible vertical tear, mild bilateral bursitis and a large Baker's cyst. *Page ID#* 292-93.

On November 17, 2007, Dr. Sayegh reported that plaintiff "is having fibromyalgia that is very bad problem with a lot of anxiety and severe depression resistant to all kinds of treatment . . . . We re-placed her on the fibromyalgia treatment." *Page ID#* 356. He added, "I think [plaintiff] is very difficult [sic] to work especially labor job but she can take a chance of vocational rehabilitation and very light and part-time duty job." *Id.*

On February 1, 2008, plaintiff complained of severe muscle spasms and tenderness throughout her body, severe depression and

5

difficulty sleeping. Dr. Sayegh noted tenderness in the girdle muscles of the upper and lower extremities. Her medications were renewed. *Page ID#* 355. On March 27, 2008, plaintiff rated her pain as 9 on a 10-point scale. *Page ID#* 362. Dr. Sayegh again noted tenderness in the girdle muscles of the upper and lower extremities. *Id.*

X-rays of plaintiff's pelvis and hips, taken in March 2008, showed preserved joint spaces, intact bony structures and no fractures or gross bony abnormalities. *Page ID#* 396.

On May 7, 2008, Dr. Sayegh completed a Lumbar Spine Impairment Questionnaire, reporting that plaintiff had severe fibromyalgia with a poor prognosis and constant pain all over, unrelieved by medication. *Page ID#* 348, 350. His clinical findings included limited range of motion, tenderness, muscle spasm, swelling, abnormal gait, muscle weakness, trigger points, positive straight leg raising, severe depression and sleeplessness. *Page ID#* 348-49. According to Dr. Sayegh, plaintiff could stand/walk and sit for two hours in an eight-hour workday but would need to get up and move around every hour when sitting. Plaintiff could occasionally lift and/or carry over 50 pounds, but no weight frequently; she could do no pushing, pulling, kneeling, bending or stooping. *Page ID#* 350-51, 353. Dr. Sayegh opined that plaintiff's experience of pain or other symptoms was severe enough to interfere with her attention and concentration. *Page ID#* 352. She could not handle even low stress work. *Id.* Dr. Sayegh also opined that other limitations would interfere with plaintiff's ability to sustain a regular job, including a need to avoid wetness, noise, fumes, gases, temperature extremes, humidity, dust, and heights. *Page ID#* 353. Plaintiff was likely to miss work more than three times per month. *Id.*

On June 24, 2008, Dr. Kollengode noted that plaintiff "has been unable to work for the last year due to back and knee pain. She is going through extensive testing to find the cause." *Page ID#* 323.

On July 2, 2008, plaintiff complained to Dr. Sayegh of increased pain, which she rated as 10 on a 10-point scale despite medication. *Page ID#* 361. Physical examinations by Dr. Sayegh in July 2008, October and March 2009, showed tenderness in the neck, mid- and lower-back areas bilaterally and in the paraspinal muscles. There was also tenderness and swelling noted around the midline and tenderness in the left knee. *Page ID#* 360, 361, 374.

An MRI of plaintiff's lumbar spine performed on July 25, 2008, showed a slight L5-S1 central disc bulge, but no evidence of herniation or exit foramen stenosis. *Page ID#* 364-65.

Dr. Sayegh completed a Spinal Impairment Questionnaire on May 10, 2009. *Page ID#* 366-72. He diagnosed severe fibromyalgia, knee pain, severe depression and sleep deprivation. Her prognosis was guarded. *Page ID#* 366. Dr. Sayegh opined that plaintiff could sit for only two hours in an eight-hour workday, could stand/walk for two hours in an eight-hour workday, could occasionally lift and/or carry up to 20 pounds, but could frequently carry no weight, and could do no pushing, pulling, kneeling, bending or stooping. *Page ID#* 369-72. Plaintiff was likely to miss work more than three times per month. *Page ID#* 371.

**III.**

**Administrative Decision**

In her decision, the administrative law judge found that plaintiff's severe impairments consist of obesity, fibromyalgia and knee

7

problems. *Page ID#* 40. The administrative law judge also found that plaintiff's back problems, migraine headaches and alleged mental impairment are not severe impairments. *Page ID#* 41-42. According to the administrative law judge, plaintiff's impairments – whether considered singly or in combination – neither meet nor medically equal any listed impairment. *Page ID#* 42. The administrative law judge also found that, although plaintiff's medically determinable impairments could reasonably be expected to cause subjective symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent that they are inconsistent with a residual functional capacity for a full range of sedentary work. *Page ID#* 43. Based on that residual functional capacity, and considering plaintiff's age, education and work experience, the administrative law judge relied on the Medical-Vocational Guidelines, Rules 201.28 and 201.29, to conclude that plaintiff is "not disabled." *Page ID#* 46-47.

**VI.**

**DISCUSSION**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not

try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In her *Statement of Errors*, plaintiff contends that the administrative law judge erred in finding that she retains the residual functional capacity to perform sedentary work. Specifically, plaintiff argues that the administrative law judge failed to properly evaluate the opinions of her treating physicians and failed to consider her obesity in determining her residual functional capacity. Plaintiff also argues that the administrative law judge failed to properly evaluate her credibility. Finally, according to plaintiff, the administrative law judge erred in relying on the Medical-Vocational Guidelines to find that, based on her residual functional capacity for a full range of sedentary work, she is not disabled.

### **OBESITY**

Plaintiff argues that the administrative law judge improperly evaluated the impact of her obesity and how it affects her residual

functional capacity. "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-01p, 2000 WL 628049. The Ruling recognizes Body Mass Index ("BMI") as one of the indicia of an individual's degree of obesity. *Id*. BMIs above 40, such as plaintiff's, are indicative of extreme obesity because of the potential for developing obesity-related problems. *Id*. The Ruling specifically recognizes that obesity increases the risk of developing impairments such as osteoarthritis and may contribute to mental impairments such as depression. *Id*.

> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. . . . An assessment should also be made of the effect of obesity upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. . . . [O]ur residual functional capacity assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular continuing basis . . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
> 
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone.

SSR 02-01p. In sum, SSR 02-01p "specifies that the ALJ must explain how conclusions regarding a claimant's obesity were reached." *Fleming v. Barnhart*, 284 F.Supp.2d 256, 271 (D. Md. 2003).

In the case presently before the Court, the administrative law judge found that plaintiff's obesity is a severe impairment, *Page ID#* 40, and that her BMI of 50.8 is indicative of extreme obesity. *Id.* Rather than expressly articulating the effect of plaintiff's obesity on her other impairments, however, the administrative law judge merely stated

that "its effect on the claimant's other impairments has been considered and evaluated pursuant to SSR 02-01p." *Page ID#* 42.

**Treating physician opinions**

Plaintiff also contends that the administrative law judge should have accorded controlling weight to the opinion of Dr. Sayegh, her treating pain specialist, in determining plaintiff's residual functional capacity. As discussed *supra*, Dr. Kollengode expressed an opinion of disability, *Page ID#* 323, and Dr. Sayegh opined that plaintiff could sit, stand or walk for only two hours in an eight-hour workday and could lift and/or carry up to 20 pounds occasionally but no weight frequently. Dr. Sayegh further indicated that plaintiff could do no pushing, pulling, kneeling, bending, or stooping. *Page ID#* 369-72.

The opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). If the administrative law judge finds that either of these criteria have not been met, she is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating

source. ..." *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009); *Wilson*, 378 F.3d at 544. In this regard, the administrative law judge is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §§ 404.1527(d)(2), (4); 416.927(d)(2),(4).

In rejecting the opinion of disability expressed by Dr. Killengode, the administrative law judge merely stated:

> As for the opinion evidence, on February 15, 2008, Dr. Killengode opined that Ms. Morris had medical problems that prevented her from working. However, this is an opinion on an issue reserved to the Commissioner of Social Security is [sic] given no weight as it is conclusory, and is not supported by the medical record as a whole. Furthermore, the doctor's opinion is inconsistent with his treatment notes and is accordingly rendered less persuasive.

*Page ID#* 45. In rejecting the opinions and assessments of Dr. Sayegh, the administrative law judge merely stated, "The opinion of Dr. Sayegh is inconsistent with his treatment notes and is accordingly rendered less persuasive." *Id.* The administrative law judge failed to articulate, for example, in what respect the opinions of these treating physicians were inconsistent with their treatment notes.

Significantly, the administrative law judge also rejected the only other medical assessment contained in the record, *i.e.*, the state agency physicians' opinion that plaintiff is able to perform a reduced range of medium work. *Page ID#* 46 ("The undersigned gives little weight to the opinions of these state agency consultant physicians, as inconsistent with the medical evidence of record.")

This Court concludes that the administrative law judge failed to evaluate the opinions of plaintiff's treating physicians by reference

12

to the standards of the Commissioner's own regulations and *Blakley*. Moreover, because the administrative law judge also rejected the only other medical assessments reflected in the record, the Court must conclude that, in finding that plaintiff has a residual functional capacity for a full range of sedentary exertion, the administrative law judge was improperly relying on her own lay opinion regarding a medical issue.

Under these circumstances, the Court concludes that the decision of the Commissioner is not supported by substantial evidence and cannot be affirmed.[3]

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further consideration of the medical evidence.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

---

[3] Because the Court concludes that the matter must be remanded for further consideration of plaintiff's treating physician opinions and the impact of plaintiff's obesity, the Court will not consider plaintiff's contentions that the administrative law judge erred in evaluating plaintiff's credibility or in basing her finding of non-disability on the Medical-Vocational Guidelines. On remand, however, the Commissioner is free to consider those contentions.

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. See *Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

<u>Date:</u> February 1, 2012  <u>*s/Norah McCann King*</u>
Norah McCann King
United States Magistrate Judge